# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Lynne Dowds and Brendan Lee, | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 566 C.D. 2019 |
| | : | Submitted: January 17, 2020 |
| Zoning Board of Adjustment, | : | |
| City of Philadelphia, Xe Lua LLC, | : | |
| Cecilia Moy Yep, Lai Lun Mark, | : | |
| Ruth Louie and Mabel Chen | : | |

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ELLEN CEISLER, Judge

OPINION BY JUDGE BROBSON                FILED:  November 5, 2020

Appellants Lynne Dowds and Brendan Lee (Objectors) appeal from the order of the Court of Common Pleas of Philadelphia County (Common Pleas), dated April 3, 2019.  Common Pleas, which did not take additional evidence, affirmed a decision of the Zoning Board of Adjustment (ZBA)[1] of the City of Philadelphia (City), which denied Objectors' appeal of the Philadelphia Department of Licenses and Inspections (L&I) issuance of a zoning/use permit to Appellee Xe Lua, LLC (Owner).[2]  For the reasons discussed below, we reverse Common Pleas' order with instructions that it vacate the ZBA's decision and remand the matter to the ZBA for the issuance of a new decision.

---

[1] Although the ZBA's decision does not include a date on which it was issued, it appears that the ZBA voted to deny the subject zoning/use permit on August 8, 2018.  (Original Record (O.R.) at 255.)

[2] We will refer to Owner and the City, collectively, as Appellees.

# I. BACKGROUND

Owner owns property located at 1009-1011 Spring Street, Philadelphia (Property). (Reproduced Record (R.R.) at 108a, 110a.) The Property was a vacant lot in 2004, when Owner applied to L&I to relocate the lot lines to create one lot and build a three-story semi-detached structure, thirty-five feet (35') high, with above ground parking. (*Id*.) L&I denied the application because a special use permit was needed for above ground parking. (R.R. at 109a.) Owner appealed L&I's decision to the ZBA, where the appeal remained pending until 2007. (R.R. at 111a.)

In February 2007, Owner requested the support of the neighbors, including Objectors, for its special use permit application for above ground parking. (R.R. at 27a, 29a, 30a.) Objectors own 1015 Spring Street, Unit E, which is a three-story building located immediately east and perpendicular to the proposed building, with windows on the first, second, and third floors facing the Property. (R.R. at 27a, 28a.) Objectors, other neighbors located near the Property, and the Philadelphia Chinatown Development Corporation (PCDC)[3] met with Owner and its lawyer to discuss the special use permit application, which culminated in a letter from PCDC to the ZBA Chairman on February 23, 2007. (R.R. at 16a-18a, 97a, 99a.) The PCDC letter provides, in pertinent part:

> The zoning applicant for the above-referenced property presented plans to our organization and to the homeowners adjacent to the propose[d] project. We do not oppose [Owner's] request for zoning variances

---

[3] PCDC is a registered community organization (RCO) concerned with the physical development of its community in the City of Philadelphia. (R.R. at 99a.) RCOs receive advance notice of projects within their communities that will be reviewed by the ZBA, hold public meetings where comments on planned development may be made, and receive notification of variance or special exception applications. *In Re: Appeal of East Torresdale Civic Association Appeal of: Kevin Goodchild* (Pa. Cmwlth., No. 562 C.D. 2019, filed May 4, 2020), slip op. at 2 n.1 (*Goodchild*).

provided that [Owner] adheres to the following list of provisos:  The height of the building is two stories high and no taller than 25 feet . . . .

(R.R. at 97a.)  In May 2007, the ZBA granted Owner's special use permit and adopted the terms of the PCDC letter as a proviso that the height of the building on the Property was limited to two stories high and no taller than twenty-five feet (25').  (R.R. at 97a, 111a.)  Owner subsequently built a compliant two-story building on the Property with above ground parking.  (R.R. at 98a.)

In 2010, Owner sought to add two additional stories to the existing two-story structure on the Property.[4]  (R.R. at 98a.)  Owner and its lawyer again met with PCDC and the neighbors who opposed the building of additional floors that would make the building higher than twenty-five feet (25').  (R.R. at 39a, 40a.)  PCDC, on behalf of itself and the neighbors, sent a letter to the ZBA Chairwoman on July 26, 2010, opposing the application because it would violate the 2007 proviso limiting the building height on the Property to twenty-five feet (25').  (R.R. at 98a.)  Owner withdrew the special use permit application before a decision was rendered. (R.R. at 22a.)

Thereafter, the City comprehensively revised its Zoning Code, effective August 22, 2012.[5]  City Council, on June 12, 2014, changed the Property's zoning from "C-4" to "RM-1."[6]  (R.R. at 125a-130a.)  The RM-1 zoning classification allows for structure heights up to thirty-eight feet (38') as a matter of right and no

---

[4] We note that while Owner's actual application to L&I is not part of the record, the PCDC letter of July 26, 2010, summarizes that Owner was seeking to add additional stories to the two-story structure already on the Property and that the matter was pending before the ZBA. (R.R. at 98a.)  The absence of Owner's actual application in the record does not affect our decision in this matter.

[5] Phila., Pa., Ordinance No. 110845 (December 22, 2011).

[6] Phila., Pa., Ordinance No. 140315 (June 12, 2014).

3

longer required a special use permit for above ground parking. (R.R. at 75a.) That same month, L&I issued Code Bulletin of Information No. Z-1401 (Code Bulletin), pertaining to the "Impact of Previous Variances on New Zoning Permit Applications," which provides guidance to L&I staff and the public for properties that are subject to a previous variance, certificate, or special exception.[7] (R.R. at 117a-118a.)

In early 2017, Owner sought a zoning variance to add two stories to the existing two-story structure on the Property. (R.R. at 99a, 124a.) As to the proposed addition, PCDC sent a letter to Owner, dated April 11, 2017, providing:

> We found and reviewed your construction plans for 1009 Spring Street dated January 11, 2010. The plan proposes a [four]-story building on the site at 1009 Spring Street.
>
> You currently have a [two]-story residential building on the site. You are proposing to add a [third] floor and [fourth] floor to the existing structure for a total of [four] floors. PCDC supports your plans based on your January 11, 2010 drawings.
>
> When your application is ready for community review, PCDC will help you through your community meeting process, work with you on any design matters, and support your application.

(R.R. at 124a.) Owner and its lawyer met with PCDC and the neighbors located near the Property on September 12, 2017, to discuss Owner's request for a zoning

---

[7] Section 14-103(3)(h) of the Zoning Code empowers L&I

> to promulgate such regulations as are necessary and appropriate to implement the provisions of the Zoning Code. Any administrative manual or any other advisory publication prepared as a guide for this Zoning Code shall be posted on the City's website and shall not be binding, unless promulgated in accordance with the provisions of [Section] 8-407 of [t]he Philadelphia Home Rule Charter.

Section 8-407 of the Philadelphia Home Rule Charter provides the required process for the promulgation of a regulation which includes submission to the City's Law Department, filing with the City's Department of Records, public notice, and a possible public hearing on the subject matter prior to approval by City Council. We note that the Code Bulletin is not a regulation but rather an "administrative manual" or "advisory publication."

variance to go above the thirty-eight feet (38') allowable roof height up to forty-nine feet (49'). (R.R. at 99a.) PCDC, on behalf of itself and the near neighbors, sent a letter to the ZBA Chairman on September 15, 2017, opposing Owner's zoning variance application. (*Id*.) PCDC objected because of the limitations previously agreed upon in the 2007 proviso and because "[t]he addition of two additional stories [would] significantly reduce the air and sunlight for six homes immediately next to [the P]roperty." (*Id*.) In apparent response to the PCDC objection, Owner withdrew its zoning variance application.[8] (R.R. at 21a-22a, 99a.)

On September 28, 2017, Owner submitted an application to L&I for a zoning/use permit, again seeking to erect a two-story addition on top of the existing two-story structure up to a height of thirty-eight feet (38'). (R.R. at 121a.) L&I reviewed Owner's application and, on December 4, 2017, issued a zoning/use permit "as of right," allowing the structure on the Property to be up to thirty-eight feet (38') in height pursuant to the RM-1 zoning classification. (R.R. at 120a-123a.) Owner did not immediately post a copy of the zoning/use permit on the Property. (R.R. at 16a, 17a.)

On April 11, 2018, Owner received a building permit from L&I to build the two additional floors. (R.R. at 138a.) Owner posted the building permit on the Property and began to move building materials on site around April 22, 2018. (R.R. at 36a.) Objectors' attorney hand-delivered a letter to Owner on April 26, 2018, (1) objecting to the additional floors; (2) stating that the zoning/use permit violated the 2007 proviso limiting the structure to twenty-five feet (25');

---

[8] Though the record does not indicate when Owner withdrew the zoning variance application that was pending before the ZBA, Objectors represent in their brief that Owner withdrew the zoning variance application, and the parties do not appear to dispute this occurrence. (Objectors' Brief at 13.)

(3) advising Owner that they intended to appeal the issuance of the zoning/use permit; (4) requesting that Owner immediately stop construction pending the appeal; and (5) advising that "[a]ny construction that you do will be at your risk that the [ZBA] or other appropriate body will require that it be removed." (R.R. at 131a.)

Objectors and others appealed L&I's issuance of Owner's zoning/use permit on May 8, 2018. (R.R. at 133a-137a.) That same day, Objectors' attorney mailed a copy of the appeal papers to Owner and again requested Owner to stop construction on the Property pending Objectors' appeal. (R.R. at 132a.) On June 19, 2018, Objectors' attorney also sent a letter to the Honorable Mark Squilla, Councilman, Philadelphia City Council, seeking his assistance in writing a letter to the ZBA supporting Objectors' appeal. (R.R. at 140a-141a.) On June 26, 2018, Councilman Squilla sent a letter to the ZBA Chairman, supporting Objectors' appeal. (R.R. at 142a.)

The ZBA held an evidentiary hearing on Objectors' appeal of L&I's issuance of the zoning/use permit on June 27, 2018. (R.R. at 5a.) Objectors presented Cecilia Moy Yep and Lai Lun Mark, owners of 1015 Spring Street, Units A and B, who provided testimony about the events that occurred surrounding the Property since 2004, including how the 2007 proviso was established, descriptions of how the neighbors' properties related to Owner's Property, and observations relating to the posting of Owner's zoning/use permit. (R.R. at 16a-44a.) Objectors also presented the testimony of Joseph Beller, Esquire, as an expert witness.[9] (R.R. at 45a-74a.) Attorney Beller, who practiced zoning law in the Philadelphia area since 1962,

---

[9] We note that the ZBA never directly ruled on whether it accepted the testimony of Mr. Beller as an expert witness, despite the continued objections of L&I and Owner's attorneys. The ZBA's findings of fact included twelve paragraphs referencing Mr. Beller's testimony, and, on appeal, neither L&I nor Owner object to his testimony as a possible expert witness on the issue of Philadelphia zoning law.

6

reviewed the documents involved in Objectors' case and offered his opinion that the 2007 proviso survived the 2014 remapping of the Property, such that L&I's issuance of the zoning/use permit by right violated the current Zoning Code. (R.R. at 46a, 55a-59a.)

L&I called Plans Examiner Ana Gindhart, an employee of L&I, who testified that she reviewed Owner's 2017 zoning application to confirm its compliance with the Zoning Code. (R.R. at 74a-75a.) Ms. Gindhart testified that the current zoning classification for the Property was RM-1. (*Id*.) Ms. Gindhart testified that she considered the 2007 proviso, the Zoning Code, and the Code Bulletin before she issued the by-right zoning/use permit. (R.R. at 76a, 77a.) Based on the Code Bulletin, she did not believe the 2007 proviso still applied to the Property. (R.R. at 78a.)

On August 8, 2018, the ZBA voted to deny Objectors' appeal of L&I's issuance of the zoning/use permit. (Objectors' Brief, Attachment 2, at 1-15 (ZBA Decision; O.R. at 255).) The ZBA, in relevant part, found:

1. In 2004 the Property was a vacant lot, mapped as C-4 commercial zoning.

. . . .

3. In 2004, [Owner] sought a zoning/use permit from [L&I] to construct a two-story multi-family structure with above[ ]ground parking at the Property. The above[ ]ground parking required a special use permit under C-4 commercial zoning, for which reason the application was referred to the ZBA.

4. From 2004 to 2007, [Owner's] Appeal for the Special Use Permit was pending, until it was granted by the [ZBA] with provisos.

5. In 2007, L&I issued [to Owner] a zoning/use permit for the special use at the Property.

6. Following a change in the Zoning Code in 2012, the Property was remapped and became RM-1 residential multi-family in 2014.

7

Under RM-1 zoning, above[ ]ground parking is not a special use and does not require special approval from the Board.

7. The change in zoning to RM-1 also increased the permissible maximum structure height at the Property to thirty-eight feet (38').

8. On December 4, 2017, L&I issued current property [Owner] a by-right zoning/use permit authorizing the erection of a third[-] and fourth[-]story addition with a roof deck at the existing two-story structure at the Property.

9. [Owner] then submitted building plans and obtained approval and a building permit from L&I on April 11, 2018.

10. On May 8, 2018, near neighbors Cecilia Moy Yep, Lai Lun Mark, Ruth Louie, Mabel Chen, Brendan Lee and Lynne Dowds, and Glenn Mark . . . appealed the zoning[/use] permit issuance to the [ZBA].

11. A hearing on the matter was held before the [ZBA] on June 27, 2018.

. . . .

14. On August 8, 2018, the [ZBA] voted to deny the appeal, thereby affirming [L&I's] issuance of the challenged [zoning/use] permit.

. . . .

17. The third[-] and fourth[-]story addition authorized by the challenged [zoning/use] permit has been built above the existing two-story structure and meets current height and setback requirements; the structure's non-conforming footprint at ground level and second floor has not changed.

18. At the June 27, 2018 zoning hearing, [Objectors' attorney] outlined the following bases for appeal:

> i. [Owner] should be restricted to a twenty-five[-]foot (25') height limit included in the 2007 ZBA zoning[/use] permit grant provisos;
>
> ii. The Property should have two five[-]foot side yards; and
>
> iii. The Property should have a rear yard of nine feet.

. . . .

35. Ms. Yep testified that the original 2007 ZBA zoning[/use] permit grant included certain provisos agreed to following meetings with registered community organization[—*i.e.*, PCDC—]and near neighbors. These provisos included a maximum structure height of no more than twenty-five feet (25'). Ms. Yep expressed her frustration

8

that [Owner] did not meet with PCDC or hold hearings prior to the 2017 application or subsequent construction.

. . . .

37. Ms. Yep also testified to zoning appeals made and withdrawn by [Owner] in 2010, over relevancy objections by [L&I].

38. Both Ms. Yep and . . . near neighbor Ms. Mark testified that they did not see a posting of the zoning[/use] permit or building permit until [Owner] began building in April 2018.

. . . .

44. [Objectors' attorney] called Joseph Beller, Esquire, an experienced zoning lawyer, to testify on behalf of [Objectors].

45. [L&I's attorney] hailed Mr. Beller's zoning expertise, but objected to the introduction of his testimony before the [ZBA] as an expert witness interpreting the law of the [Z]oning [C]ode. [Owner's attorney] likewise objected to Mr. Beller testifying as an expert witness.

. . . .

73. [L&I's attorney] called L&I Plans [E]xaminer Ana Gindhart to testify regarding her review of the subject application and issuance of the challenged by-right [zoning/use] permit.

74. Ms. Gindhart testified that she reviewed the 2017 [zoning/use] permit application to confirm compliance with Philadelphia Code requirements. She stated that current zoning classification for the Property was RM-1, with a maximum height restriction of thirty[-]eight feet (38')[.] She confirmed that on its face, the [zoning/use] permit application met the current height restriction.

75. When asked about current dimensional requirements for setbacks and yards, Ms. Gindhart agreed that while the structure had a non-conforming footprint at ground level, "[Owner] had to meet the rear yard requirements at the addition[.] [Owner does not] have to meet it at the existing structure." After her first review, Ms. Gindhart testified that she sent [Owner] a letter requiring they [sic] either seek a refusal or submit revised plans with the upper floors set[]back by nine feet per Code.

76. As a result, Ms. Gindhart said, [Owner] submitted revised plans showing [Zoning] Code[-]compliant rear yard setbacks.

. . . .

79. Ms. Gindhart testified that through [L&I] files, she was aware of the 2007 proviso at the time she reviewed the 2017 [zoning/use] permit

9

application.  Ms. Gindhart said "[w]hen I looked at the proviso, then I referred to the [Zoning] Code and the Code Bulletin," after which she issued the [b]y-[r]ight [zoning/use] permit.

80.  When asked by [L&I's attorney] if the 2007 proviso applied to the Property in 2017 on her reading of the Code Bulletin, Ms. Gindhart answered, "No[.]"

81.  Over objections from [Objectors'] attorney, [L&I's attorney] asked Ms. Gindhart, in her reading of the [Zoning] Code and application of the Code Bulletin, "if the special use permit is no longer required, what remaining effect does that proviso have?  Does it have any remaining impact on whether you can approve the current permit application? Ms. Gindhart again answered, "No."

82.  [Objectors' attorney] finally cross-examined Ms. Gindhart about the total height of the proposed addition.  Trying to read from small print on the plans, Ms. Gindhart agreed that the parapet described could be thirty-six inches (36").  Ms. Gindhart denied counsel's suggestion that the parapet height would render the addition in excess of the [Zoning] Code's maximum thirty-eight[-]feet [(38')] height limit[.] She explained, "[t]he parapet is a requirement for a building permit[.] They have to have it[.]  And it does not count as a total height of the building[.]"

(ZBA Decision at 1-11 (citations omitted).)

The ZBA, in relevant part concluded:

1.  The [ZBA] concludes [L&I] acted properly in issuing the zoning/use permit challenged in this appeal.

. . . .

7.  In issuing the challenged [zoning/use] permit, L&I determined that plans for the Property addition met all current [Zoning] Code requirements under remapped zoning, including those for height and setbacks.  L&I also reviewed prior history on the Property and determined that the 2007 proviso no longer applied when the [b]y-[r]ight [zoning/use] permit application was made in 2017.

8.  The [ZBA] concludes that L&I's interpretation was reasonable and consistent with both the relevant [Zoning] Code requirements and the [Zoning] Code mandated rules of interpretation.

9.  The Property is located in an RM-1 residential multi-family zoning district.  Rules applicable to the district permit a maximum building

height of thirty-eight feet (38') and require setbacks for front, side, and rear yards.

. . . .

11. As recognized by L&I, the existing multi-family structure at the Property has a non-conforming footprint at [the] ground level and second floor.

. . . .

15. Here, [L&I] correctly determined that the proposed addition complied with all applicable dimensional requirements and did not increase the Property's existing non[-]conformity.

16. The authorized construction will not exceed the maximum permitted height or increase the existing building footprint. The existing multi-family residential use is permitted and will not change.

17. The [ZBA] must defer to the interpretation applied by L&I, the agency charged with administering the Zoning Code.

18. For all of these reasons, the [ZBA] concludes the challenged [zoning/use] permit was properly issued.

19. The [ZBA] additionally concludes [Objectors] did not establish error on L&I's part.

20. In their legal memorandum submitted to the [ZBA], [Objectors] argue that the 2007 height proviso must be recognized not merely as a private agreement, but as a continuing proviso attached to the challenged 2017 [zoning/use] permit application and enforceable by L&I[.] Under the [Zoning] Code, they contend, L&I must "deny an application for a zoning[/use] permit if the application is not consistent with or would require a modification of the terms of a proviso approved by the [ZBA.]" Given the proposed addition's height of 38' height [sic] conflicts with the 25' height limit of the 2007 proviso, [Objectors] reason, "the previously issued proviso shall govern[.]"

21. No case law supports [Objectors'] interpretation. While [Objectors] sought to distinguish the cases cited in [Owner's] legal memorandum, they cite no precedent for their primary argument on interpretation.

22. The [ZBA] concludes that L&I's initial review, guided by the [Zoning] Code and Code Bulletin, properly determined that [Owner] was entitled to a [b]y-[r]ight zoning/use permit for the Property addition in 2017 based on remapped zoning in 2014, regardless of the 2007 proviso. Following the 2014 remapping, [Owner] no longer

11

needed the underlying special use permit. This situation presented a change in circumstances that superseded the 2007 proviso and rendered the associated private agreements obsolete and unenforceable by L&I.

23. With respect to private agreements, [Zoning] Code [S]ection 14-109 mandates, "the City shall not be responsible for monitoring or enforcing private agreements[.]"

24. [Objectors] argue that the Code Bulletin applied by L&I staff in reviewing the challenged [zoning/use] permit application "is invalid because it conflicts with the express language of Philadelphia Code" Sections 14-303(6)(a) and (d).

25. [Objectors] argue further that the Code Bulletin "is contrary to the [ZBA] rules and regulations pertaining to administrative review which may require L&I to determine whether there is a conflict with past [ZBA] provisos," and furthermore "does not apply to provisos[.]"

26. L&I is authorized to issue the Code Bulletin to staff who administer and enforce the [Zoning] Code. The Code Bulletin provides guidance on permit applications and interpretation of relevant [Zoning] Code sections. The [ZBA] must defer to the interpretation applied by L&I, the agency charged with administering the Zoning Code.

27. [Objectors] assert standing based on their proximity to the Property, the Property addition's impairment to light and air at [Objectors'] properties, and their having been parties to the 2007 proviso agreement.

28. The [ZBA] concludes that [Objectors] lack standing because they have shown no direct and substantial public interest in the matter, and because zoning conditions have changed at the Property. The Property addition, including any impairment to light and air at surrounding properties, is a [b]y-[r]ight use that was contemplated and approved by City Planning and City Council in the remapping of zoning districts in 2014.

29. The [ZBA] additionally notes that the construction authorized by the challenged permit would be allowed even if [Objectors'] standing argument [was] accepted. The Property addition was permitted [by r]ight under 2014 zoning remapping and building plans otherwise met all [Zoning] Code requirements.

30. Finally, [Objectors] argue that [Owner] built at [its] own risk "and has no vested rights in keeping the building intact[.]"

31. The [ZBA] rejects [Objectors'] final argument, as [Objectors] did not file a written application for a stay of the zoning building permits properly issued by L&I to [Owner]. Therefore [Owner's]

12

continued construction at the Property during the ongoing [ZBA] appeal was permissible under the [Zoning] Code. [*See* Zoning] Code [ ] § 14-303(15[)](a)(7).

(ZBA Decision at 12-15 (citations omitted).) Objectors appealed the ZBA's decision to Common Pleas.

Common Pleas, without taking additional evidence, denied Objectors' appeal by order dated April 3, 2019. Common Pleas submitted its opinion pursuant to Pa. R.A.P. 1925(a) on July 31, 2019, agreeing with Appellees that the Zoning Code was ambiguous, giving deference to L&I's interpretation, and concluding that the 2014 rezoning of the Property made the 2007 proviso no longer relevant. This appeal followed.

## II. ISSUES

Objectors raise the following issues on appeal.[10] First, the ZBA erred in concluding that Objectors lacked standing to appeal L&I's issuance of the zoning/use permit. Second, Common Pleas exceeded its scope of review by making findings of fact that the ZBA did not make. Third, Common Pleas erred in concluding that the appeal was from the grant of a special exception rather than from L&I's issuance of the zoning/use permit. Fourth, the ZBA erred in its interpretation

---

[10] When, as here, a common pleas court accepts no additional evidence in a zoning appeal, our review is limited to considering whether the ZBA erred as a matter of law or abused its discretion. *Singer v. Phila. Zoning Bd. of Adjustment*, 29 A.3d 144, 148 n.1 (Pa. Cmwlth. 2011). "An abuse of discretion will be found only where the zoning board's findings are not supported by substantial evidence." *Hertzberg v. Zoning Bd. of Adjustment of City of Pittsburgh*, 721 A.2d 43, 46 (Pa. 1998). "Substantial evidence" is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* We are mindful that "[i]n zoning cases, it is well-settled that the [ZBA] is the fact finder, with exclusive province over matters of credibility and weight to be afforded the evidence . . . [and] this Court will not engage in fact finding or disturb the [ZBA's] credibility determinations on appeal." *Manayunk Neighborhood Council v. Zoning Bd. of Adjustment of City of Phila.*, 815 A.2d 652, 658 (Pa. Cmwlth. 2002).

13

of the Zoning Code when it granted the zoning/use permit. Fifth, due to Owner's knowledge of Objectors' challenge to the zoning/use permit throughout the construction process, Owner proceeded at its own risk and has no vested rights in the addition.

### III. DISCUSSION

### A. Standing

We first address the threshold question of standing. Objectors argue that they have standing because: (1) they are abutting property owners to the Property; (2) they were parties to the agreement that became the 2007 proviso at issue here; and (3) they satisfy the general requirements for standing under case law. Owner argues that Objectors lack standing in this case because there was no evidence presented that they would suffer a detrimental impact from the approved zoning/use permit. As discussed above, the ZBA found that Objectors did not have standing as they did not show any direct or substantial public interest in the matter. Common Pleas did not address the issue of standing.

A challenge to a party's standing raises a "question[] of law; thus, our standard of review is *de novo* and our scope of review is plenary." *Johnson v. Am. Standard*, 8 A.3d 318, 326 (Pa. 2010). Section 17.1 of the First Class City Home Rule Act[11] (Home Rule Act) limits standing to appeal a zoning decision to two classes— aggrieved persons and the governing body vested with legislative powers. *O'Neill v. Phila. Zoning Bd. of Adjustment*, 169 A.3d 1241, 1245 (Pa. Cmwlth. 2017). In Philadelphia, City Council is the governing body vested with legislative powers providing it with standing in zoning decisions. *See* Section 14-301(2)(a) of the

---

[11] Act of April 21, 1949, P.L. 665, *as amended*, added by Section 2 of the Act of November 30, 2004, P.L. 1523, 53 P.S. § 13131.1.

Zoning Code. Section 17.1 of the Home Rule Act further provides that "the term 'aggrieved person' does not include taxpayers of the city that are not detrimentally harmed by the decision of the zoning hearing board or other board or commission to regulate development." Thus, "[to] have standing, a party must demonstrate a substantial, direct and immediate interest in the outcome of litigation as opposed to a remote and speculative interest." *Society Hill Civic Ass'n v. Phila. Bd. of License & Inspection Review*, 905 A.2d 579, 586 (Pa. Cmwlth. 2006) (*Society Hill*). "A substantial interest is one that surpasses the common interest of all citizens in procuring obedience to the law." *Id*. at 586 n.3. "A direct interest requires a showing that the matter complained of has caused harm to a party's interest, and an immediate interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it." *Id*.

In *Society Hill,* a developer that owned historic townhouses located in the Society Hill section of Philadelphia sought permission from the City's Historical Commission to develop a luxury high-rise residential tower and make alterations to the historic townhouses. *Id*. at 582. The developer improperly preserved the facades on the townhouses during the construction, and, in 2003, the carved marble cornices on the facades collapsed. *Id*. The developer sought to replace the facades with fiberglass instead of marble, and the Historical Commission unanimously approved reconstructing the cornices using fiberglass. *Id*. at 583. The Society Hill Civic Association (Association) appealed the Historical Commission's decision to the Philadelphia Board of License and Inspection Review (Board). *Id*. The Historical Commission questioned the Association's standing to appeal, and, after a hearing, the Board concluded that the Association had standing and affirmed the Historical Commission's decision. *Id*. The Association appealed to Common Pleas, which in

15

relevant part, determined that the Association had standing to appeal because it had a substantial, direct, and immediate interest in preserving the historic attributes of Society Hill. *Id.* Common Pleas also affirmed the Board's decision. *Id.* The Association appealed the Common Pleas decision to this Court. *Id.*

The developer, that had earlier intervened in the case, challenged the Association's standing arguing that it "must assert a pecuniary interest or injury to its members and that neither the Association nor its members sustained an injury by the substitution of materials on the facades." *Id.* at 586. We disagreed and concluded that the Association and its members had standing because: (1) they were directly involved in the subject of the litigation by negotiating with the developer for preservation of the facades; (2) they expressed their concerns at various public meetings including the Historical Commission; and (3) the purpose of the Association was to promote preservation and restoration of historic buildings in the Society Hill area of the City. *Id.*

More recently, we reviewed the standing of a civic organization in *Goodchild*.[12] The landowner, who owned a café, applied to L&I for a zoning/use permit to erect additional floors to buildings as well as other improvements to the property in 2014. *Goodchild*, slip op. at 1, 2. The East Torresdale Civic Association (Civic Association), an RCO with the City of Philadelphia, provided a letter to the ZBA requesting that any approval contain, among other things, a proviso that

---

[12] Pursuant to Commonwealth Court Internal Operating Procedure Section 414(a), 210 Pa. Code § 69.414(a), relating to the citing of judicial opinions, an unreported opinion of the Court issued after January 15, 2008, may be cited only "for its persuasive value, but not as binding precedent."

16

prohibited the use of the outdoor patio on the property. *Id*. The ZBA conditioned its approval by including the Civic Association's provisos.

In 2016, the landowner purchased an adjacent parcel to the property and applied for a zoning permit with L&I, seeking, in relevant part, an approval for outdoor seating. *Id*. L&I denied the permit, concluding that: (1) because the original restaurant had originally been approved by variance, any extension or modification of the use required approval by the ZBA; and (2) the variance for the existing restaurant application included a proviso stating "no outdoor seating." *Id*., slip op. at 2, 3. The landowner appealed the L&I decision to the ZBA, which held a hearing in June 2018 where the Civic Association, as well as other neighbors, opposed the variance application. *Id*., slip op. at 3. The ZBA granted the landowner's variances, with conditions prohibiting outdoor music, limiting the use of the café, and restricting delivery times to two hours during the daytime. *Id*.

The Civic Association appealed to Common Pleas, where the landowner filed a motion to quash the appeal on the grounds the Civic Association lacked standing to appeal. *Id*. Common Pleas denied the landowner's motion and ultimately reversed the ZBA's decision. *Id*. The landowner appealed to this Court, arguing in pertinent part that the Civic Association lacked standing. *Id.*, slip op. at 4. We concluded that the Civic Association had standing to appeal and that Common Pleas did not err in denying the landowner's application to quash the Association's appeal. *Id*., slip op. at 7. We determined the factors supporting the Civic Association's standing were: (1) it is an RCO with the City of Philadelphia; (2) it was instrumental in negotiating an agreement (*i.e.*, the 2014 proviso) that allowed the landowner's expansion of his property; and (3) it participated in the hearings that were subject to the landowner's 2017 variance application, which sought, among other things, to

17

modify the 2014 proviso. *Id.*, slip op. at 6, 7. While the entities in both *Society Hill* and *Goodchild* were associations, both cases provide persuasive authority, and we believe that the distinction is not prohibitive to granting standing to Objectors in this case.

Here, Objectors were involved in the 2007 special permit process that led to the ZBA granting Owner's special use permit for above ground parking with the proviso limiting the building height on the Property to twenty-five feet (25'). In 2018, Objectors also intervened and participated in the ZBA hearing challenging L&I's issuance of a zoning/use permit that allowed the building height on the Property to increase to thirty-eight feet (38'), as well as the subsequent appeal to Common Pleas. Moreover, Objectors own a townhouse that is immediately to the west of the Property in this case. Unit E faces east and is perpendicular to the building on the Property, with windows on the first, second, and third floors facing the Property. The Unit E townhouse is three stories high, while Owner built an additional two stories on the existing two-story building. Objectors argue that the addition caused an impairment of light and air due to the increase in the height of Owner's building. For these reasons, Objectors have demonstrated a substantial, direct, and immediate interest in the outcome of this matter beyond that of the general interest of a taxpayer. We conclude that Objectors, therefore, have standing in this matter to challenge the ZBA's and Common Pleas' decisions.

### B. Common Pleas Scope of Review

Objectors argue that Common Pleas exceeded its scope of review because, although it did not take additional evidence, it referenced in its decision statements of the attorneys and/or testimony contained in the record that were not part of the ZBA's findings of fact, thereby essentially making its own factual findings.

18

L&I counters that the statements and/or testimony to which Objectors object pertain to background information and peripheral matters and that their inclusion within Common Pleas' decision did not affect Common Pleas' analysis. Regardless of whether Common Pleas may have exceeded its scope of review, we are mindful of our role in this matter. Our role, here, given that Common Pleas did not take additional evidence in this zoning appeal, is limited to reviewing the *ZBA's* decision, not that of Common Pleas. *See Singer*, 29 A.3d at 148 n.1. In other words, we will consider whether the *ZBA*—not Common Pleas—erred as a matter of law or abused its discretion. *See id.* Thus, we do not need to consider whether Common Pleas exceeded its scope of review in referencing statements made during the proceedings that were not encompassed in the findings of the ZBA. Nor do we have to consider whether such error, if it occurred, constitutes harmless error. Instead, we will consider the issues now before this Court in the context of the ZBA's decision—not the decision of Common Pleas.

## C. Nature of Appeal

Objectors next argue that Common Pleas erred in concluding that the appeal was from the grant of a special exception rather than from L&I's grant of a zoning/use permit. Objectors request that we not consider Common Pleas' special exception discussion. The City agrees with Objectors that Common Pleas erred in discussing the burdens of proof for a special exception and asserts that the "special exception analysis was not necessary because the deciding issue here was the legal question of whether L&I properly granted [Owner's] permit as-of-right." (City's Brief at 16, 17.) Owner does not appear to take a position on this issue. As discussed above, our role in this case is to review the decision of the ZBA—not

19

the decision of Common Pleas. For these reasons, we did not consider Common Pleas' discussion or decision about special exceptions in reaching our decision.

## D. Interpretation of Ordinance

Next, we consider Objectors' contention that the ZBA erred in its interpretation of the Zoning Code when it granted the zoning/use permit.[13] Objectors advance several arguments in support of this issue: (1) the ZBA erred in its interpretation of Sections 14-303(6) of the Zoning Code and the Code Bulletin, which required L&I to deny the zoning/use permit application because the application conflicted with the 2007 proviso; (2) the ZBA erred to the extent it relied on Section 14-109 of the Zoning Code, which applies to private agreements; and (3) the ZBA erred to the extent that it concluded that Owner no longer required the underlying special use permit for parking.

As we review the relevant Zoning Code provisions, Code Bulletin, and principles of statutory construction, we are mindful that "[w]here the words in an ordinance are free from all ambiguity, the letter of the ordinance may not be disregarded under the pretext of pursuing its spirit." *Adams Outdoor Advert., LP v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469, 483 (Pa. Cmwlth. 2006) (citations omitted), *appeal denied*, 923 A.2d 1175 (Pa. 2007). The Pennsylvania Supreme Court cautions that "[w]hether a statute is ambiguous cannot be determined in a vacuum." *Kulig*, 175 A.3d at 231-32. Specifically, "[a] statute is ambiguous when there are at least two reasonable interpretations of the text. In construing and giving effect to the text, 'we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear.'"

---

[13] Review of a question of statutory interpretation is *de novo*, and our scope of review is plenary. *In re Trust Under Deed of David P. Kulig Dated January 12, 2001,* 175 A.3d 222, 229 (Pa. 2001) (*Kulig*).

*Kulig*, 175 A.3d at 232 (citations omitted) (quoting *A.S. v. Pa. State Police*, 143 A.3d 896, 905-06 (Pa. 2016)).  Furthermore, we note that while the Statutory Construction Act, 1 Pa. C.S. §§ 1501-1991, "does not specifically apply to our construction of zoning ordinances, we have nonetheless applied these principles in our interpretive decisions." *Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd.*, 207 A.3d 886, 899 (Pa. 2019).

Under the Statutory Construction Act of 1972, "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the [legislative body]." 1 Pa. C.S. § 1921(a).  "'The clearest indication of legislative intent is generally the plain language of a statute.'" *Greenwood Gaming & Entm't, Inc. v. Cmwlth.*, 218 A.3d 982, 985 (Pa. Cmwlth. 2019) (quoting *Walker v. Eleby*, 842 A.2d 389, 400 (Pa. 2004)).  It is presumed that the legislative body "intends the entire statute to be effective and certain." *Greenwood Gaming and Entm't, Inc.*, 218 A.3d at 985 (citing 1 Pa. C.S. § 1921(b)).  "Thus, no provision of a statute shall be 'reduced to mere surplusage.'" *Id*. (quoting *Walker*, 842 A.2d at 400).  Moreover, "[e]very statute shall be construed, if possible, to give effect to all of its provisions." *Id*. (quoting 1 Pa. C.S. § 1921(a)).

*1. Section 14-303(6) of the Zoning Code and the Code Bulletin*

Objectors argue that the ZBA misinterpreted Section 14-303(6) of the Zoning Code—particularly subsections (a), (d)(.1), and (e)—and the Code Bulletin when denying their appeal.  They contend that the express language of the Zoning Code mandates that L&I must deny an application for a zoning/use permit if the application is not consistent with or would require a modification of the terms of a proviso approved by the ZBA.  Moreover, they contend that, because the Zoning Code provides that if a proviso previously issued by the ZBA conflicts with the

21

provision of the Zoning Code, the previously issued proviso shall govern. Furthermore, they argue that the Code Bulletin is invalid because it is contrary to the provisions of the Zoning Code, such that L&I erred to the extent that it relied upon the Code Bulletin. Specifically, Objectors assert that the Code Bulletin conflicts with Section 14-303(6) of the Zoning Code and does not apply to provisos in the manner suggested by the ZBA. As a result of the above, Objectors take the position that L&I should have denied the application for a zoning/use permit, which outcome then would have provided Owner with an opportunity to appeal the matter to the ZBA. Under such a scenario, the ZBA would act as the decision maker and conduct an independent review. Objectors assert that, although the ZBA considered the matter, it did not conduct an independent review. Instead, it gave deference to L&I's decision, when that decision should not have been given any weight.

Appellees counter that the relevant sections of the Zoning Code do not address what should happen in situations such as this, where the Zoning Code allows a proposed use as of right but an earlier proviso or variance would impose greater restrictions no longer necessary under the Zoning Code. Appellees contend that the relevant sections of the Zoning Code are ambiguous and suggest that "it is reasonable to interpret them as prioritizing the rights granted under the current Zoning Code." (City's Brief at 10.) Characterizing "compliance with the Zoning Code [as] the ultimate polestar for all requirements under Subsection 14-303(6)" and without identifying to what "special procedures" they refer, Appellees suggest that none of the special procedures, purportedly related to variances and provisos, are required when the proposed used is by right. (*Id.*) To hold otherwise, they urge, would render those special procedures superfluous and unnecessary. They reason that "[t]he obvious purpose of requiring compliance with the [Zoning] Code *and* any variance

22

or proviso is to ensure that the owner does not use a new permit to incrementally expand a non-conforming use." (*Id.* (emphasis in original).) The Code Bulletin provides that "[t]he Zoning Code does not clearly address whether the current Zoning Code or the previous variance, certificate, special exception or proviso should govern in cases of conflict," (R.R. at 117a), and Appellees assert that L&I and the ZBA, as the bodies with special expertise in the Philadelphia Zoning Code, are entitled to great deference in their interpretation of the Zoning Code. *See Hamilton Hills Grp., LLC v. Hamilton Twp. Zoning Hearing Bd.*, 4 A.3d 788, 793 (Pa. Cmwlth. 2010).

Furthermore, applying statutory construction concepts, Appellees note that Section 14-201 of the Zoning Code provides that the Zoning Code must be "construed to favor the landowner, provided that the resulting construction does not lead to irrationality in the Zoning Code" and that L&I's interpretation fully effectuates Section 14-201 and the intent behind the revised Zoning Code—*i.e.*, to allow property owners to make full use of their land. (City's Brief at 13.) They also contend that their interpretation of the Zoning Code is consistent with every indicator of City Council's intent to foster growth, streamline the process of obtaining permits, and "enable responsible development to proceed 'as of right,'" *see* Section 14-101(3)(c) of the Zoning Code, and that City Council's choice to loosen the height and parking limits for the Property in question reflects City Council's determination that those restrictions are not necessary to achieve the Zoning Code's goals. (*Id.* at 13-14.) Finally, Appellees contend that the perpetuation of old restrictions on the use of the Property that City Council specifically abolished when it reformed the Zoning Code and remapped the Property would constitute an absurd

23

result, not intended by City Council and inconsistent with concepts of statutory construction.

In addition to the above, Owner directs the Court to *Ford v. Zoning Hearing Board of Caernarvon Township*, 616 A.2d 1089 (Pa. Cmwlth. 1992), wherein we held that a landowner was entitled to the removal of conditions of a variance for land when the landowner had established a change in circumstances making the conditions inappropriate, arguing that, here, the change of the Zoning Code and remapping of the Property constitute circumstances that justify removal of the conditions in this instance.

Section 14-303(6)(a) of the Zoning Code provides:

This section applies to all applications where the decision on a permit is to be made by L&I . . . . L&I shall have authority to issue the permits and approvals listed in this § 14-303(6) (Zoning Permits):

(.1) Regardless of whether the existing lot, structure, or use is currently in conformance with the provisions of this Zoning Code; and

(.2) Regardless of whether the existing lot, structure, or use is currently subject to a variance, permit, certificate, special exception, or proviso issued by the ZBA, provided that the application shall be consistent with the terms of the current Zoning Code and that variance, permit, certificate, special exception, or proviso. *If the application is not consistent with or would require a modification of the terms of a variance, permit, certificate, special exception or proviso approved by the ZBA, or otherwise not consistent with this Zoning Code, the application shall be denied and referred to the ZBA for action pursuant to the applicable section.*

(Emphasis added.)

Section 14-303(6)(d)(.1) of the Zoning Code provides, in relevant part:

Except as provided in § 14-303(6)(d)(.2), L&I shall approve the application only if it determines that it complies with the following criteria.

(.a) The application complies with all provisions of the Zoning Code applicable to the conditional zoning approval or zoning permit included

24

in the application and is *consistent with the terms of all variances, permits, certificates, special exceptions, or provisos previously issued by the ZBA for the uses, structures, and property involved in the application.*

(.b)  *If a variance, permit, certificate, special exception, or proviso previously issued by the ZBA conflicts with the provisions of this Zoning Code, the previously issued variance, permit, certificate, special exception, or proviso shall govern. . . .*

(Emphasis added.)

> Section 14-303(6)(e) of the Zoning Code provides:
>
> L&I shall review each application under this section and shall approve or deny the application pursuant to the criteria in § 14-303(6)(d) (Criteria for Approval).  L&I is authorized to list additional requirements not already stated on an application that are necessary to bring the application into compliance with this Zoning Code.
>
> Finally, the Code Bulletin provides, in relevant part, as follows:
>
> *The direction provided in this [C]ode [B]ulletin shall only apply to new applications for properties that are subject to a previous variance, certificate or special exception.*
>
> . . . .
>
> If a subsequent permit application complies with the current Zoning Code but does not conform to a previous *variance, certificate or special exception*, the provisions of the current Zoning Code shall govern and L&I shall issue the permit.
>
> If a subsequent permit application does not comply with the current Zoning Code, L&I shall deny the application and keep the refusal/referral specific to that proposed component that violates the current code.
>
> If a subsequent permit application indicates that the original non-compliant condition still exits *and* is still non-compliant under the current Zoning Code, the permit application must comply with the terms of a variance and related proviso or L&I shall deny the application.

(R.R. at 118a (first emphasis added).)  The Code Bulletin also recognizes that the ZBA "has the right to place conditions on approvals.  The conditions may result in

25

the restriction of components which otherwise would be permitted by the Zoning Code. These restrictions are expressly stated as a proviso." (*Id.*)

Our review reveals no ambiguity in the provisions at issue. The language of Section 14-303(6)(a)(.2) is clear and unambiguous: "If the application is not consistent with or would require a modification of the terms of a . . . proviso approved by the ZBA, . . . the application shall be denied and referred to the ZBA for action pursuant to the applicable section." The language of Section 14-303(6)(d)(.1) of the Zoning Code, which provides, in part, that "[i]f a . . . proviso previously issued by the ZBA conflicts with the provisions of this Zoning Code, the previously issued . . . proviso shall govern," is likewise clear and unambiguous in that it mandates that L&I may approve an application for a permit *only* if the permit would not conflict with the provisions of a previously issued proviso. Finally, the language of the Code Bulletin is equally clear and unambiguous in that it is inapplicable to the situation now before the Court. Although the Code Bulletin characterizes the Zoning Code as "not clearly address[ing] whether the current Zoning Code or the previous variance, certificate, special exception or provision should govern in the case of conflict," (R.R. at 117a), the Code Bulletin does *not* direct L&I to issue a permit if the application complies with the current Zoning Code but does not conform to a previous *proviso*. Rather, the Code Bulletin only directs L&I to issue a permit if the "application complies with the current Zoning Code but does not conform to a previous *variance, certificate, or special exception*." (R.R. at 118a (emphasis added).) The word "proviso" is conspicuously absent from that direction. Appellees, based almost solely on their belief that this framework should not apply to the unusual situation before the Court, urge the Court to look past the clear language of the Zoning Code in order to manufacture an ambiguity that does not

26

exist and to apply the Code Bulletin in a manner inconsistent with the Code Bulletin's directions. Appellees do not suggest how the language above could be read in a manner consistent with the result they seek; instead, they merely take the position that, given the overall context of the situation, an ambiguity must exist and the Court should apply a different framework not tethered to the language of the Zoning Code or Code Bulletin. This we cannot do.

Given our conclusion that the relevant provisions of the Zoning Code are not ambiguous, we need not apply principles of statutory construction when analyzing whether the ZBA erred in its interpretation of the provisions discussed above. The plain language of Section 14-303(6)(a)(.2) of the Zoning Code requires L&I to "den[y] and refer[] to the ZBA for action" an application "not consistent with . . . the terms of a . . . proviso approved by the ZBA." The reality that L&I was not permitted to issue a zoning/use permit in the face of an existing proviso in conflict with the application is reinforced by the plain language of Section 14-303(6)(d)(.1) of the Zoning Code, which provides that L&I may grant an application for a zoning/use permit in situations where a previously issued proviso conflicts with provisions of the Zoning Code *only if* the application is consistent with the previously issued proviso—*i.e.*, only if the "previously issued . . . proviso shall govern." As discussed above, the language in the Code Bulletin does not apply to a proviso, so the Code Bulletin is inapplicable to our analysis. Thus, we agree with Objectors that L&I erred in granting the application, as the relevant provisions of the Zoning Code requires L&I to deny the permit and refer the matter to the ZBA.

Our analysis, however, does not end there. As noted above, our role is to review the decision of the ZBA. *See Singer*, 29 A.3d at 148 n.1. Although L&I erred in not denying that application and referring the matter to the ZBA, the ZBA

27

nonetheless considered the matter on appeal. Thus, we must consider whether the ZBA's review of the matter on appeal essentially rectified the procedural deficiency. Under Section 14-303(6)(a)(.2) of the Zoning Code, the ZBA is the entity charged with making the determination as to whether the zoning/use permit should be issued notwithstanding the earlier issued proviso. It is with the appropriate role of the ZBA in mind that we now consider the ZBA's decision.

In its decision, "[t]he [ZBA] conclude[d] that [L&I] acted properly in issuing the zoning/use permit challenged in this appeal." (ZBA Decision, Conclusion of Law (COL) No. 1.) In reaching that ultimate conclusion, the ZBA outlined its reasoning as follows: "L&I determined that [the] plans for the Property met all current [Zoning] Code requirements," "that the 2007 provision no longer applied when the [b]y-[r]ight permit application was made in 2017," and that "L&I's interpretation was reasonable and consistent with both the relevant [Zoning Code] requirements and the [Zoning] Code mandated rules of interpretation"—the latter presumably a reference to the Code Bulletin. (*Id.*, COL Nos. 7, 8.) Furthermore, "[t]he [ZBA] must defer to the interpretation applied by L&I, the agency charged with administering the Zoning Code." (*Id.*, COL No. 17). In addition to those conclusions supporting L&I's issuance of the zoning/use permit, the ZBA issued additional conclusions in support of the determination that Objectors did not establish error on the part of L&I. (*Id.*, COL No. 19.) Specifically, the ZBA expressly rejected the interpretation of Section 14-303(6)(a)(.2) and 14-303(6)(d)(.1) advanced by Objectors *and recognized by this Court above—i.e.*, that "L&I must 'deny an application for a zoning permit if the application is not consistent with or would require a modification of the terms of a proviso approved by the [ZBA].'" (*See id.*, COL No. 20.) In conclusion of law number 22, the ZBA

opined: "L&I's initial review, *guided by the [Zoning] Code and Code Bulletin*, properly determined that [Owner] was entitled to a [b]y-[r]ight zoning/use permit for the Property addition in 2017 based on remapped zoning in 2014, regardless of the 2007 proviso." (*Id.*, COL No. 22 (emphasis added).) In that same conclusion of law, the ZBA went on to explain: "Following the 2014 remapping, [Owner] no longer needed the underlying special use permit. This situation presented a change in circumstances that superseded the 2007 proviso and rendered the associated private agreement obsolete and unenforceable by L&I." (*Id.*, COL No. 22.) The ZBA also concluded that it "must defer to the interpretation [of the Code Bulletin] applied by L&I, the agency charged with administering the Zoning Code." (*Id.*, COL No. 26.)

Thus, a review of the ZBA's analysis reveals that the ZBA applied an incorrect interpretation of the relevant sections of the Zoning Code and applied the Code Bulletin, which is not applicable to provisos. Moreover, rather than apply its own analysis, the ZBA gave deference to L&I's interpretation of the Zoning Code and Code Bulletin. Although one could argue that conclusion of law number 22 included independent analysis on the part of the ZBA that the "situation presented a change in circumstances that superseded the 2007 proviso," a review of the analysis surrounding the conclusion suggests that such is not the case. The ZBA's review was deferential of L&I's decision, and the ZBA did not analyze the matter anew.[14]

---

[14] In *German v. Zoning Board of Adjustment*, 41 A.3d 947 (Pa. Cmwlth. 2012), we explained the analysis to be applied by the ZBA when it reviews, in the context of changed circumstances, the continuing appropriateness of a condition previously imposed by it, as follows:

Because . . . conditions imposed by a zoning hearing board are presumed to be for the purpose of protecting the public interest, when a party demonstrates a change in circumstances related to the land at issue which indicates that the conditions are no longer appropriate for the protection of the public's interest, a

**(Footnote continued on next page…)**

Thus, we agree with Objectors that the ZBA erred in its interpretation of the Zoning Code and Code Bulletin and misapprehended its role in this process. For these reasons, a remand to the ZBA for the issuance of a new decision addressing the effect of the proviso on the application is appropriate.

## 2. *Section 14-109 of the Zoning Code*

With regard to Section 14-109 of the Zoning Code,[15] Objectors argue that the ZBA erred to the extent that it may have concluded that the 2007 proviso was a private agreement between the parties. In advancing this argument, Objectors note that it is not clear whether the ZBA may have denied the appeal, in part, on the basis that it determined that the twenty-five feet (25') height restriction was a private agreement not enforceable by the ZBA. A review of conclusions of law numbers 20, 22, and 23 suggests that the ZBA recognized the existence of the 2007 proviso and made two conclusions related thereto: (1) the 2007 proviso

zoning hearing board may re-evaluate the conditions it originally imposed. If a party demonstrates a change in circumstances, then a reviewing body may proceed to consider whether the original conditions continue to serve the function of protecting the public interest that gave rise to the particular conditions in the first place. The question at the heart of the inquiry is what changes in circumstances render the conditions *no longer appropriate*.

*German*, 41 A.3d at 950 (emphasis in original); *see also Emery v. City of Phila. Zoning Bd. of Adjustment* (Pa. Cmwlth., No. 725 C.D. 2013, filed March 21, 2014) (considering whether ZBA should have modified proviso in light of changed circumstances).

[15] Section 14-109 of the Zoning Code provides:

Where the provisions of this Zoning Code impose a greater restriction than that imposed by a private agreement, including but not limited to any easement, covenant, or deed restriction, the provisions of this Zoning Code will control. Where the provisions of a private agreement impose a greater restriction than this Zoning Code, the provisions of the private agreement may be enforced between private parties notwithstanding the provisions of this Zoning Code. The existence of a private agreement shall not excuse any failure to comply with this Zoning Code. This City shall not be responsible for monitoring or enforcing private agreements.

30

was superseded due to a change in circumstances; and (2) to the extent PCDC and Owner entered into a private agreement that PCDC would support the 2007 special use permit application if Owner agreed to the imposition of a height restriction by the ZBA through a proviso, the private agreement was obsolete and unenforceable by L&I. Thus, we do not read the ZBA's decision as having reduced the 2007 proviso to the status of a mere private agreement. Rather, we read the decision as speculating that, in addition to the 2007 proviso, a private agreement may exist between PCDC and Owner, but any such private agreement, if it exists, is not enforceable by L&I or the ZBA.

*3. Section 14-803(1)(c)(.1) of the Zoning Code*

Objectors next argue that the ZBA erred in its interpretation of the Zoning Code when it determined that the application for the zoning/use permit was consistent with the Zoning Code, given that Owner's parking garage does not comply with Section 14-803(1)(c)(.1) of the Zoning Code. That section provides, in part:

> In the RSA-5, RM-1, and CMX-2 districts, *accessory parking* for any single-family, two-family or multi-family use in an attached or semi-detached building *shall be prohibited unless it can be accessed from a shared driveway, alley, or rear street on which no on-street parking is permitted on the side of the rear street directly abutting the lot*.

Section 14-803(1)(c)(.1) of the Zoning Code (emphasis added). Objectors explain that, here, the accessory parking for the Property is accessed from the front street and is not "accessed from a shared driveway, alley, or rear street" as required by Section 14-803(1)(c)(.1) of the Zoning Code. Objectors' argument as to the effect of the alleged compliance with Section 14-803(1)(c)(.1) of the Zoning Code appears to be two-fold. First, Objectors assert that if the application does not comply with Section 14-803(1)(c)(.1), then L&I erred in granting the zoning/use permit. Second,

31

Objectors assert that if Owner's accessory parking is permissible despite this non-compliance, it is only because of the special use permit issued by the ZBA in 2007, which Owner acquired in exchange for the 2007 proviso. Under the latter scenario, Objectors maintain that the special use permit, therefore, remains necessary for the Property, and L&I erred in concluding otherwise. Either way, Objectors assert that the ZBA erred in denying their appeal.

Appellees counter that Owner's parking garage does not need to comply with Section 14-803(1)(c)(.1) of the Zoning Code because the parking garage was a non-conformity that existed before this section of the Zoning Code became effective. Appellees submit that the ZBA correctly rejected Objectors' claim because the 2017 zoning/use permit did not increase the non-conformity. Appellees direct our attention to Section 14-305(4)(a) of the Zoning Code, which provides: "A non[-]conformity may continue following any amendment to this or any prior Zoning Code that creates a condition in which a use, structure, parking area, site improvement, lot, or sign *has been made non[-]conforming*."[16] (Emphasis added.)

Objectors disagree with Appellees' reliance on Section 14-305(4)(a) of the Zoning Code and argue that Owner's parking garage was legal before Section 14-803(1)(c)(.1) of the Zoning Code based on the 2007 special exception which permitted the parking garage at that location, so the special use permit remains relevant today.

A review of the ZBA's decision reveals that it did not specifically address whether Owner's parking garage complied with Section 14-803(1)(c)(.1) of the

---

[16] Appellees also reference Section 14-305(6) of the Zoning Code, which addresses expansions and extension of non-conforming structures, and Section 14-305(7) of the Zoning Code which addresses "non-conforming lots," but the relevance of these sections is unclear and unnecessary to our analysis.

32

Zoning Code. As a result, it did not consider the significance, if any, of such non-compliance, if any. In fact, the ZBA's analysis is sparse. As to the parking garage, the ZBA found that "[i]n 2004, [Owner] sought a zoning/use permit from [L&I] to construct a two-story multi-family structure with above[ ]ground parking at the Property. The above[ ]ground parking required a special use permit under C-4 commercial zoning, for which reason the application was referred to the ZBA." (ZBA Decision, Finding of Fact (FF) 3.) The ZBA issued the special use permit in 2007. (*Id.*, FF 5.) "Following a change in the Zoning Code . . . , the Property was remapped and became RM-1 residential multi-family . . . . Under RM-1 zoning[,] above[ ]ground parking is not a special use and does not require special approval from the [ZBA]." (*Id.*, FF 6.) The ZBA did not specifically consider Section 14-803(1)(c)(.1) of the Zoning Code in its decision. In fact, the ZBA's only analysis on this issue is the one sentence in conclusion of law number 22, discussed above, wherein the ZBA concluded that "[f]ollowing the 2014 remapping, [Owner] no longer needed the underlying special use permit." This analysis appears to be based only on the finding that the Property no longer required a special use permit for above ground parking.

The ZBA's analysis does not address whether the special use permit somehow remains necessary given that above ground parking does not appear to meet the requirements of Section 14-803(1)(c)(.1) of the Zoning Code. Nor does it address whether the Property's parking constitutes a "non[-]conformity [that] may continue." *See* Section 14-305(4)(a) of the Zoning Code.[17] When the ZBA considers

---

[17] Interestingly, we note that Section 14-305(4)(a) provides for the continuation of a non-conformity "following any amendment to . . . [the] Zoning Code that creates a condition in which a use, structure, parking area, site improvement, lot, or sign has been made non[-]conforming." This language appears to raise a question as to whether the amendment to the **(Footnote continued on next page…)**

this matter on remand, it will need to make a determination as to whether the Property continues to be dependent on the special use permit for parking, and, if so, how that affects the zoning/use application before it.

## IV. CONCLUSION

Accordingly, we reverse the order of Common Pleas and remand the matter to Common Pleas with instruction that it vacate the ZBA's decision and remand the matter to the ZBA for the issuance of a new decision. On remand, the ZBA shall consider the matter as if L&I had denied the zoning/use permit and referred it to the ZBA under Section 14-303(6)(a)(.2) of the Zoning Code. On remand, the ZBA should consider whether the Property was no longer dependent on the special use permit to be in compliance with the Zoning Code following the amendment to the Zoning Code and remapping of the Property and whether circumstances have changed such that the issuance of the zoning/use permit is appropriate despite the existence of the 2007 proviso. In so doing, the ZBA should make its own independent determination and not give deference to the decision of L&I.[18]



P. KEVIN BROBSON, Judge

---

Zoning Code created the non-conformity at issue here, given that the parking garage was never conforming on its own—it was allowable by special use permit only.

[18] Because we are directing that Common Pleas vacate the ZBA's decision and remand the matter to the ZBA for the issuance of a new decision, discussion of any relief to which Objectors may be entitled in the event that they are ultimately successful in challenging the issuance of the permit would be premature. Thus, we will not address Objectors' argument that, due to Owner's knowledge of Objectors' challenge to the zoning/use permit throughout the construction process, Owner proceeded at its own risk and has no vested rights in the addition.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lynne Dowds and Brendan Lee,     :
                  Appellants  :
                            :
           v.                :    No. 566 C.D. 2019
                            :
Zoning Board of Adjustment,      :
City of Philadelphia, Xe Lua LLC,  :
Cecilia Moy Yep, Lai Lun Mark,   :
Ruth Louie and Mabel Chen     :

# **O R D E R**

AND NOW, this 5th day of November, 2020, the order of the Court of Common Pleas of Philadelphia County (Common Pleas), dated April 3, 2019, is REVERSED, and the matter is REMANDED to Common Pleas with instructions that it vacate the decision of the Zoning Board of Adjustment (ZBA) and remand the matter to the ZBA for issuance of a new decision.

Jurisdiction relinquished.

 

_____

P. KEVIN BROBSON, Judge